IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, | § § § § § § § § § § § § § | |
| PLAINTIFF, | | |
| VS. | | Civil Action: 1:22-cv-954 |
| AT&T MOBILITY SERVICES LLC, | | |
| DEFENDANT. | | |

## COMPLAINT

Comes now Communications Workers of America, AFL-CIO, hereinafter Plaintiff, by and through counsel, and complains of AT&T Mobility Services LLC, hereinafter Defendant, as follows:

### I.   Introduction

1. This is an action brought by a labor union under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §185, against Defendants to compel arbitration of a grievance filed by the Union claiming violations of an existent collective bargaining agreement containing grievance and arbitration articles entitling the Union to pursue its grievance through the grievance procedure and arbitration.

### II.   Parties

2. Plaintiff Communications Workers of America, AFL-CIO ("CWA" or "Union") is a labor organization within the meaning of 29 U.S.C. § 152(5) of the National Labor Relations Act.  Plaintiff is currently the representative for the purpose of collective bargaining of employees of Defendants AT&T Mobility Services LLC and AT&T Customer Services, Inc.;

1

CWA is and has been a party to a collective bargaining agreement ("CBA") with those employers, who are collectively known as the "Company" in the current labor agreement entered into on February 22, 2020 and expires on February 23, 2024.

3. Defendant AT&T Mobility Services LLC is an employer within the meaning of 29 U.S.C. § 152(2) and employs persons in an industry affecting commerce within the meaning of 29 U.S.C. § 185. Said Defendant is a signatory to the 2020 CBA, wherein it is identified in Article 1, Agreement, of the CBA as one of the entities that are parties to the recognition of the Union as exclusive representative, and are collectively referred to in Article 1 as the "Company." Defendant AT&T Mobility Services LLC does business in this judicial district and can be served with process through its registered agent for service of process, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4. Another entity, formerly known as AT&T Customer Services, Inc. and now, on information and belief, operating as DirecTV, was an entity that was wholly owned by AT&T, Inc., the parent company of the Defendant in this lawsuit, and was party to the CBA at issue prior to the corporate spin-off from AT&T, Inc. resulting in the creation of a new entity, which, on information and belief, is currently referred to as "DirecTV" is now owned by Defendant's corporate parent in partnership with other entities and is not accountable to the Union for the grievance that is the subject of this action and is not being sued herein.

### III. Jurisdiction

5. The district court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(a) and 185(c).

## IV. Venue

6. Venue is proper in this judicial district in that Defendant does business in and reside in this district within the meaning of 28 U.S.C. §1391(b)(1) and in that a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this district within the meaning of 28 U.S.C. §1391(b)(2).

## V. Material Facts

7. Plaintiff and Defendant are parties to a collective bargaining relationship that dates back to the 1990s. The most recent CBA between the parties was entered into on February 22, 2020 and expires on February 23, 2024; the CBA covers employees in the states of Arkansas, Kansas, Missouri, Oklahoma, and Texas.

8. The CBA contains a grievance process in Article 7 that culminates in binding arbitration under Article 9. Article 7, Grievances, of the CBA provides the method by which alleged violations of the CBA, including disciplinary actions, can be addressed with the Company. The formal grievance process contains two pre-arbitration steps.

9. The arbitration article is set forth in Article 9 of the CBA. Under Article 9 the Company is authorized to dismiss employees with more than one year of service only for just cause. Prior arbitration awards and bargaining history confirm this interpretation.

10. Article 14, Force Adjustment, provides the process by which employees can preserve their employment or leave payroll with a severance payment when the Company initiates a layoff.

11. Article 7, Grievance Procedure, states that a grievance can be brought alleging (1) the violation of provisions of the CBA or challenging application of provisions of the CBA to employees, (2) employees were disciplined, including discharged, without just cause, and (3)

employees suffered an improper reduction or loss of any contractually established benefit arising out of employment with the Company.

12. Article 9, Arbitration, states that a matter taken through the steps of the grievance procedure can be arbitrated by the Union following the conclusion of the second step of the formal grievance process.

13. Arbitration is final and binding under Article 9 of the CBA.

14. In approximately 2016, Defendant's corporate parent, AT&T, Inc., acquired DirecTV and DirecTV Customer Services, Inc. As a result of the acquisition, DirecTV Customer Services, Inc. was added to the entities identified in Article 1, Agreement of the AT&T Southwest Mobility CBA that are defined in Article 1 as the "Company." The Company recognizes the Union as exclusive representative of employees covered by the agreement in Article 2, Recognition and Establishment of the Unit.

15. In approximately February 2021, it was announced that DirecTV was being spun-off into a standalone corporate entity that AT&T would no longer exclusively own. This transaction affected several different bargaining units across the United States that are represented by CWA in dealings with various entities affiliated with AT&T, including Defendant. The new DirecTV would employ hundreds of employees whom it would receive from the aforementioned bargaining units in the intercorporate transactions. Each employee received by the new DirecTV would continue to be covered by the applicable collective bargaining agreement that covered the employee in the employee's applicable pre-transaction bargaining unit, i.e. the new DirecTV would assume all of the said collective bargaining agreements.

16. The Agreement of Contribution and Subscription dated February 25, 2021 and entered into between Defendant AT&T Services, Inc. and the business entities giving rise to the new DirecTV provides that the new DirecTV is only responsible for obligations that were incurred after its assumption of the labor agreements; making any pre-assumption violations of CBA at issue in this case the responsibility of Defendant. This lawsuit concerns only the transactions affecting employees who were employed by Defendant prior to the new DirecTV's assumption of the 2020 CBA with Plaintiff CWA.

17. The only dealing relating to this transaction to which the Union was a party was memorialized in a document entitled "Memorandum of Agreement re: Assumption of Labor Contracts" that was signed by representatives of the Union on August 3, 2021. Through this agreement, DirecTV adopted the applicable labor agreements covering employees it was receiving from AT&T-affiliated entities, including employees covered by the labor agreement at issue in this case. This document also states that the new DirecTV standalone entity will be responsible for any violation of the labor agreement that occurs after the spin-off from AT&T.

18. In August 2021, the Union became aware that employees had been separated from their employment with Defendant unjustly, through means other than those stated in the Force Adjustment article, and that severances had not been paid in accordance with the CBA.

19. The Union filed the following grievance on September 3, 2021:

> This class action grievance charges the Company with the following violations of the 2020 labor agreement between AT&T Mobility Services and Communications Workers of America, AFL-CIO, District 6: (1) the termination without just cause and/or constructive discharge without just cause of bargaining unit employees who were terminated on or about Monday, August 2, 2021, by operation of the employees being involuntarily transferred to DirecTV; and (2) the violation of Article 14, Force Adjustment of the 2020 labor agreement by (a) removing bargaining unit employees from payroll in a manner inconsistent with the terms of the labor agreement, and (b) failing to pay these employees severance pay in accordance with the terms of Article 14 of the labor agreement.

5

20. By its very terms, the grievance sought redress for the acts of Defendant in terminating the employment of bargaining unit employees with Defendant and spinning them off to the new DirecTV; the grievance did not address any act by the new DirecTV as the new employer of the bargaining unit employees; it addressed the contractual violations by the old employer in spinning the employees off from the AT&T affiliates.

21. The decisions by Defendant herein in their selection and treatment of the employees to be spun off to the new DirecTV and/or unjustly dismissed from employment as a result of the transactions concerning the spin-off of DirecTV were made before the closing date of the transactions between the AT&T entities and the new DirecTV.

22. Defendants responded to the grievance on November 23, 2021 and stated:

> Contrary to the position taken by CWA, the Company asserts that CWA specifically agreed that it would be released from the collective bargaining agreement covering the affected employees in exchange for the Company's securing the agreement of DIRECTV Entertainment Holdings, LLC to assume the collective bargaining agreement. To this end, CWA specifically agreed that DIRECTV would be the new employer. As a result, the Company asserts that it is no longer the employer of the affected employees or a party to their collective bargaining agreement. The Company further asserts that no employees were terminated in this transaction. The Company also asserts that it no longer has a grievance and arbitration agreement with CWA that covers these allegedly aggrieved members and has no obligation to entertain this grievance.

23. By their letter of November 23, 2021, Defendant nevertheless stated it would meet with the Union over the September 3, 2021 grievance.

24. The parties had several discussions concerning how to move forward with the grievance, including the Union's proposal that the first step of the grievance process be skipped so as to move forward expeditiously to arbitration. However, by letter dated July 11, 2022, the Company informed the Union that while it was willing to meet with the Union over the

grievance, the Company did not consider the matter subject to the formal grievance process and, as such, the parties never met over the grievance.

25. The Company's unilateral decision to only hear the grievance outside the formal grievance process has resulted in the case having proceeded as far as it can in the grievance and arbitration processes absent judicial intervention. The Union has exhausted its good faith efforts to pursue the grievance through the Formal Grievance Procedure, but its proper use of the grievance procedure has been wrongfully blocked by the Defendants. The grievance is thus ripe for arbitration.

## VI.   Claim for Relief

### Count 1—Compelling Arbitration of the September 3, 2021 Grievance

26. Plaintiff herein incorporates by reference Paragraphs 1-25 of the Complaint.

27. Pursuant to 29 U.S.C. § 185, Plaintiff sues to compel arbitration of the September 3, 2021 grievance. Questions of just cause for termination of employees and violations of Article 14, Force Adjustment are legitimate subjects for arbitration under Article 9, Arbitration, of the CBA. The grievance concerns conduct in violation of the CBA that arose when these employees were employed by the Company when the Company was composed entirely of wholly owned AT&T subsidiaries and concerns the pre-closing decisions about the selection and treatment of employees by the Company as it was prior to the closing of the transaction that gave rise to the new, separate DirecTV.

## VII.   Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff CWA prays that Defendant AT&T Mobility Services LLC duly appear and answer this complaint, and that upon trial of this cause the Court award judgment to Plaintiff granting relief as specified above by compelling

7

arbitration of the September 3, 2021 grievance, together with costs as provided by law and any other relief that Plaintiff is entitled to in law or at equity.

        Respectfully Submitted,

        DAVID VAN OS & ASSOCIATES, P.C.

    By:    /s/ David Van Os
            David Van Os
            Texas Bar No. 20450700
            dvo@vanoslaw.com
            /s/ Matt Holder
            Matt Holder
            Texas State Bar No. 24026937
            matt@vanoslaw.com
            8620 North New Braunfels Ave., Ste. 101
            San Antonio, Texas 78217
            Telephone:    210/824-2653
            Facsimile:    210/824-3333

            *Counsel for Plaintiff*